## In re Estate of Bolling.

[Cite as In re Estate of Bolling, 4 Ohio Misc. 51.]

(No. 598951—Decided June 10, 1965.)

Application for Order of Distribution: Probate Court of Cuyahoga County.

*Messrs. Thompson, Hine & Flory,* for executor and for Mary K. Bolling, individually, and as guardian of Barbara Bolling.

*Mr. Joel M. Garver,* for trustee for unborn lineal descendants of Barbara Bolling.

*Messrs. Hauxhurst, Sharp, Cull & Kellogg,* for guardian ad litem for minor children of Stewart Norris Bolling and for trustee for unborn lineal descendants of Stewart Norris Bolling.

ANDREWS, Chief Referee. The Central National Bank of Cleveland, as executor of the estate of Stewart Bolling, brings this application for an order of distribution of certain assets held by it and ready for distribution in such manner as the court may determine.

The assets listed in the application are an "account receivable" in the amount of $17,332.66 (paid up since the filing of the application) and principal cash amounting to $842.15 at the time the application was filed.

At a hearing held before me on October 7, 1964, counsel agreed that the amount in dispute is the $17,332.66. Any funds in addition to this are unrelated to the "account receivable" and are part of the residuary estate. The "account receivable" consisted of an indebtedness from Big Lonely Ranch, Inc., to the testator, for money which he advanced to the company.

During the course of the hearing, counsel decided to attempt a settlement, and further proceedings were postponed pending such an attempt. After several months, counsel reported that a settlement was impossible, and after the filing of further briefs, the matter was submitted to me for decision.

The question at issue is whether the fund representing payment of the account receivable passes as part of the residuary estate under item six of the will, one-half to testator's widow and one-half in trust for his daughter, Barbara, or whether it passes under item five, in trust for the lineal descendants of testator's son, Stewart Norris Bolling.

The dispositive provision of item five states:

"* * * I give and bequeath any and all securities issued by Big Lonely Ranch, Inc., a Virginia Corporation, which I may own at the time of my death, to Central National Bank of Cleveland * * *, in trust * * *."

If the account receivable comes within the term, "any and all securities issued by Big Lonely Ranch, Inc.," the fund representing it passes under this item; if not, under item six.

No testimony was given at the hearing. However, counsel agreed in open court to the correctness of the facts contained in separate affidavits, one by the executor and the other by the guardian ad litem for the lineal descendants of Stewart Norris Bolling. They agreed also to the correctness of the facts quoted in the October 7, 1964, brief of the guardian ad litem from a

certain journal entry therein identified. The journal entry related to inheritance tax proceedings in this court, and I have examined it in full.

Counsel left to me the determination of the relevancy of the facts.

The extrinsic facts do not play a significant part in the construction of the will, but it will be helpful to mention a few of them at this point, in order to understand how the ''account receivable'' was created.

Among his business interests, the testator owned stock in Big Lonely Ranch, Inc. Until October 12, 1959, his son, Stewart Norris Bolling, was also a stockholder. On that date the company bought in all the stock owned by Stewart Norris Bolling, paying $24,157.00 in cash, and giving two promissory notes for $12,000 each, maturing on August 12, 1960, and August 12, 1961, respectively.

On August 17, 1959, Big Lonely Ranch had borrowed $24,-000 from a bank in Virginia. Whether this was done in order to make the cash payment on the purchase of Stewart Norris Bolling's stock, we do not know from the agreed facts.

The testator executed his will on March 31, 1960. On April 5, 1960, he advanced $5,000 to Big Lonely Ranch, and on July 25, 1960, another $12,909.46. This made a total of $17,909.46, but, as already observed, the parties agreed at the hearing that the amount in dispute is $17,332.66, and there is no reason for me to encumber this opinion by including the details of how they reached that agreement.

The testator died suddenly and unexpectedly on August 4, 1960, at the age of seventy-five. He left surviving him his second wife, Mary K. Bolling; their daughter, Barbara Bolling, a minor; his son by a former marriage, Stewart Norris Bolling; and his son's five minor children.

At the time of his death, and presumably when he made his will, the testator owned all the common stock of Big Lonely Ranch, Inc. The company had no preferred stock, bonds, or debentures. The stock has already been properly distributed under item five of the will.

With reference to his loan to Big Lonely Ranch, there was no evidence of any promissory note, or of any agreement between the company and the testator relating to repayment.

The payment of the $17,332.66 by Big Lonely Ranch to the executor was made on December 26, 1963.

If item five stood alone, the solution of the problem presented would be simple. In business parlance we do not regard as the "securities" of a corporation, simple debts owed by the corporation to an individual. Rather, the word "securities" connotes such things as stocks, bonds, and debentures. Indeed, the guardian ad litem for the lineal descendants of Stewart Norris Bolling admitted at the hearing that except for item ten, section B, paragraph 12 of the will, the word, "securities," would not include an account receivable.

Paragraph 12 defines the word, "securities," as follows:

"The term 'securities,' wherever used in this instrument, shall include common and preferred stocks, contractual obligations of every kind, whether secured or unsecured, equitable interests in real or personal property, and intangible property of every description and howsoever evidenced."

If that broad definition carries back to item five, and if the indebtedness in question falls within the definition, the indebtedness would apparently constitute a "security" within the meaning of item five.

The guardian ad litem points to the words, "wherever used in this instrument," and declares that they mean exactly what they say. To restrict the definition of "securities" to its ordinary meaning, would not be interpretation or construction, he argues, but a bald rewriting of the will.

Counsel for the widow and daughter emphasizes that item five not only mentions "securities," but adds "issued by Big Lonely Ranch, Inc.," and he claims that the debt in question cannot be regarded as anything "issued by" the company. I will consider this point later.

Counsel for the widow and daughter also maintains that the preamble to section B of item ten, together with the general pattern of section B and of the will as a whole, leads to the conclusion that section B, including paragraph 12 thereof, relates solely to the administration of the trust property in the hands of the trustee, and has nothing to do with the question of what property passes under the dispositive provisions of the will. The complexity of the will, involving several trusts, and the innumerable powers and definitions required to carry out

the plan of the will, necessitated general definitions, such as that of "securities" in paragraph 12 of section B, continues counsel. The definition is obviously designed to give the trustees wide latitude in investing, he adds.

At this point it becomes necessary to consider the will in more detail, although I will examine only those parts of it which bear especially upon the problems involved. In connection with individual clauses, I will sometimes take up directly certain points raised by counsel concerning the particular clause.

Item four bequeaths to a trustee, in trust for Barbara Bolling, a farm and business known as Sounding Circle Ranch. This is an unincorporated business. The item lists in detail the assets bequeathed, which include accounts receivable, meaning, of course, accounts owing to the business. The item also specifies that the bequest is subject to all accounts payable, charges, and other obligations.

Some attempt, albeit a not very vigorous one, was made by counsel to use item four as an aid in the interpretation of item five. Without going into detail, it seems sufficient to say that I see nothing in item four which helps in figuring out what testator meant by the phrase, "securities issued by," in item five. The two items deal with entirely different situations, and the marked difference in their language is to be expected.

We have now seen that items four (Sounding Circle Ranch), five (securities issued by Big Lonely Ranch, Inc.), and six (residue) are dispositive in nature, and that trust estates are set up by them. In each instance, the item directs that the trust estate be held by the trustee for the benefit of the named beneficiary or beneficiaries, "in accordance with the provisions set forth" in a designated subsequent item. The subsequent item referred to in item four is item seven; in item five, it is item eight; and in item six, it is item nine.

Items seven, eight, and nine begin in substantially the same fashion, allowing, of course, for differences in names of trustees and previous item numbers. I will quote item eight because that is the one dealing with the item five trust. The reference to item six in the quotation should be disregarded. It is of no effect, because testator's wife and daughter survived him.

"The property acquired by Central National Bank of

Cleveland, as trustee, pursuant to the provisions of items five and six hereof, which is to be held by it for the benefit of the lineal descendants of Stewart Norris Bolling, my son, shall be held by it during the term of the trusts created herein and shall be administered by it as follows:''

In passing, attention should be called to the fact that the above language is clearly not dispositive. It speaks of the property ''acquired'' by the trustee ''pursuant to the provisions of items five and six hereof.'' It is not concerned with the determination of what property passes to the trustee. The same is true of items seven and nine.

After the above introductory sentence, item seven, eight, and nine proceed with detailed directions for the administration of the particular trust, including such matters as the distribution of income and principal, and, in items eight and nine, the naming of trust advisors.

Items seven, eight, and nine have a direct tie-in with item ten. The language of the three in this respect is substantially the same. Again I will use item eight as the example.

''3. The provisions of section A of item ten hereof shall be applicable to the trusts held under this item eight. In the administration of the trust property held under this item eight, the trustee shall have all of the powers, duties and immunities conferred upon the trustee in section B of item ten hereof.''

Item ten, section A, starts as follows:

''In addition to the provisions contained in items seven, eight and nine hereof, and notwithstanding anything contained therein to the contrary, the several trustees of the trusts held under said items shall hold and administer the trust property in accordance with the following provisions and limitations:''

There follow in separate paragraphs such matters as the definition of ''lineal descendants,'' the method of distribution when a beneficiary is under twenty-one or incapacitated, a spendthrift clause, and a clause to avoid operation of the rule against perpetuities.

Plainly, whereas items seven, eight, and nine deal with more particularized matters of administration, item ten, section A, covers general matters of administration, applicable to all the trusts. Here again, there is nothing dispositive.

The so-called "preamble" to item ten, section B, reads as follows:

"With respect to the trust property held under each of items seven, eight and nine hereof, each respective trustee thereunder shall have the following powers, duties and immunities:"

This preamble has nothing whatsoever to do with the question of what property passes under the bequests or devises of items four, five and six. In crystal-clear language, it relates only to the powers, duties, and immunities of the trustees. It complements the reference to it in items seven, eight, and nine, as quoted above from item eight, paragraph 3.

Disregarding for the moment paragraph 12, the individual paragraphs under this section are all administrative in character and consistent with the pattern announced in the preamble. They are unrelated to the question of what property passes. Only those of special interest will be examined. Before looking at these, it will be helpfull to recall the first part of paragraph 12. It is there stated that "the term 'securities', *wherever used in this instrument*" (Emphasis added), shall include certain enumerated classifications. They are "common and preferred stocks, contractual obligations of every kind * * *, equitable interests in real or personal property, and intangible property of every description and howsoever evidenced."

Paragraph 1 of section B, and subparagraphs (b) and (c) thereunder are of interest because they contain the word, "securities." Paragraph 1 empowers the trustee to retain as an investment, without liability for depreciation, any "securities or other property" received by the trustee from the executor. The trustee may do so notwithstanding that such retention may result in a large portion of the trust property being invested in "assets of the same character or securities of a single corporation."

Subparagraph (b) of this paragraph 1 relates directly to Big Lonely.

"(b) During any period in which a trust advisor is serving under item eight hereof, the trustee thereunder shall have no duty to review any securities issued by Big Lonely Ranch, Inc., * * * unless requested by such trust advisor to do so";

Subparagraph (c) is substantially the same except that it refers to item nine and to securities issued by Bedford-Bolling Co., Inc., or by Stewart Bolling & Co., Inc.

Although the word, "securities," issued, the context shows that only those securities already in the trust are meant, and there is no attempt to tell us which securities go into the trust, or what "issued by" means.

The word, "securities," appears again in item ten, section B, paragraph 2:

"The trustee is empowered to invest and re-invest all or any part of the trust property * * * in such securities, real estate and other property as may be selected by the trustee * * *"

Obviously the paragraph 12 definition would be applicable in this instance, and once more the definition of "securities" is used for an administrative rather than a dispositive purpose. Here it informs the trustee as to what are included as "securities" for the purpose of investment.

Quoting the beginning of item ten, section B, paragraph 6, as follows, the guardian ad litem contends that the will "conclusively demonstrates" that the testator did not intend in item five to limit "securities" to the common stock which he owned.

"The trust advisor serving under item eight hereof shall be entitled to exercise the voting rights appurtenant to any stock *or other securities* issued by Big Lonely Ranch, Inc. * * *" (Emphasis supplied by guardian ad litem.)

He argues that since there were no "securities" except the stock and the debt obligation, the latter is what must be meant by "other securities." Otherwise, he asserts, the words are meaningless. Thus, he wants us to use this paragraph as an aid in interpreting what passed into the trust under item five.

However, immediately after the words, "or other securities issued by Big Lonely Ranch, Inc.," are the words "and held by the Trustee thereunder." Then follows this sentence:

"The trust advisor or trust advisors serving under item nine hereof shall be entitled to exercise the voting rights appurtenant to any stock or other securities held by the trustee thereunder which are issued by Bedford-Bolling Co., Inc., and by Stewart Bolling & Co., Inc."

This paragraph deals expressly with property which is al-

ready a part of the trust estate. It is not dispositive in nature. Moreover, the fact that the same words, "stock or other securities," are used in connection with the other two corporations is pertinent. There is nothing in evidence indicating that these two corporations had issued anything but stock, or that either of them was indebted to the testator. Furthermore, the paragraph refers only to securities "issued by" the respective corporations, the effect of which will be discussed later in connection with item five.

It is evident that the draftsman of the will included the words "or other securities" in a routine manner in connection with all three corporations, for the purpose of extending the authority of the trust advisor to any securities, in addition to stock, which might at any time be issued and might become a part of the particular trust estate.

I cannot conceive that the above phrase, applying to all three corporations and placed among the many provisions for administering the trusts, twelve long pages after item five, reveals an intention upon the part of the testator to include in item five the indebtedness in question. The guardian ad litem attributes to the words a significance which I do not think they have.

Item ten, section B, paragraph 10 need not detain us long. "10. The trustee is empowered to register securities in the trustee's own name or in the name of the trustee's nominee without disclosing the trust, or to hold the same in bearer form."

Clearly, this paragraph is not applicable to all the classifications in the definition of "securities" found in paragraph 12. And it has no possible applicability to a mere indebtedness. Even though paragraph 12 specifies that the term, " 'securities,' wherever used in this instrument," shall include the enumerated categories, this is one instance where those words are less than all-inclusive and not to be taken literally. Another instance is found in a part of paragraph 6 which has not been quoted, and which relates to the deposit of securities under a security holders' agreement. In that setting, the word "securities" cannot possibly include a simple debt owed by the corporation.

No detailed recapitulation is necessary to justify the state-

ment that the preamble to section B of item ten; the position of the section in the will; its relation to other parts of the will; and its subject matter, all indicate that it is concerned with the administration of the trust estates, and that it is separate and apart, in thought as well as in space, from the clauses by which the testator bequeathed his property. Paragraph 12, defining "securities," is part of this complex. The difficulty arises from the words "wherever used in this instrument." It is possible that the draftsman inadvertently used excessively broad language. But we have no right to assume this. It is also possible that he intended the words, "this instrument," to refer to the trust instrument which is a part of the will, rather than to the whole will. Yet actually there is only one instrument—the will.

Immediately after the definition of "securities" in paragraph 12 is the following:

"All references contained in this instrument to Big Lonely Ranch, Inc., Bedford-Bolling Co., Inc., and Stewart Bolling & Co., Inc., shall be deemed to include any other corporation which shall acquire * * * all or a substantial part of the assets and business of any such company * * *"

Here again we find broad language which might well apply to portions of the will other than section B of item ten.

Despite such language, should we interpret paragraph 12 as limited to trust administration because of the other factors present?

It is unnecessary for me to answer this puzzling question in order to reach a decision in the action before me. I will assume, without deciding, that the words, "wherever used in this instrument," should be so interpreted as to cover the word "securities" in item five.

However, the word "securities" is modified in item five by the words "issued by Big Lonely Ranch, Inc." Does this limit the all-inclusive list of securities in paragraph 12 to those "securities" which are capable of being "issued" and are in fact "issued"?

The guardian ad litem argues that such a limitation would emasculate the definition of securities. He asks these questions: If these advances—book evidences of contractual obligations—cannot be securities because they were not issued, how can the rest of the definition have any meaning? How can

"contractual obligations of every kind" be issued? Or "equitable interests in real or personal property"? Or "intangible property of every description"?

In effect he is claiming that because the definition of "securities" applies everywhere in the will, a bequest containing that word must include every type of security listed in paragraph 12, except, perhaps, those specifically excluded.

He is also claiming in effect that anything which is a security within the definition must automatically be considered as "issued."

We have already seen that even in item ten, section B, the general administration section, the word, "securities," as used in paragraphs 6 and 10, cannot be said to embrace all the categories in the definition. The context serves to limit by implication the general direction in paragraph 12 that the word "securities" shall include the whole list "wherever used in this instrument."

In item five the limitation is express. Not all securities are bequeathed, but only those "issued by" Big Lonely Ranch. The guardian ad litem would have us ignore these modifying words. This would indeed be "emasculation." To include the words, "issued by," in our deliberations does not emasculate the word "securities." It merely recognizes the right, nay the duty, to take into account *all* the language used by the testator in making the bequest. It recognizes, too, that the definition includes some categories which may not be regarded as "issued."

Relevant definitions of "to issue" include: "to emit," "to publish or utter," "to send out," "to send forth," "to put into circulation," "to dispose of securities already authorized and prepared for disposition." See Webster's New International Dictionary: 48 C. J. S., Issue, pp. 784, 785; *Scott* v. *Abbott* (8th Cir. 1908), 160 Fed. 573, 577.

Inasmuch as no special definition of "to issue" appears in the will, we must assume that it was used in its ordinary business sense. We would not be justified in giving to the expression some strained or unorthodox meaning.

It is apparent that Big Lonely Ranch did nothing even remotely resembling the issuance of a security. To hold that this indebtedness was "issued" would be directly opposed to

the meaning of the term. Nothing whatever was emitted, published or uttered, sent out, sent forth, or put into circulation.

The guardian ad litem contends that the mere assumption of liability for repayment, or at least the making of entries of the indebtedness in its books (which is assumed, there being no evidence on the subject), constituted the issuance of a security. But this contention flies in the face of the meaning of "issue," discussed above. Making the book entries was not an emitting or publishing, as claimed. And the fact that the testator was the president of Big Lonely Ranch and was "fully informed," is beside the point. I disagree with the assertion by the guardian ad litem that it does not involve any severe strain upon the language used by the testator to say that the assumption of liability for repayment of the advances was something which "issued" from Big Lonely to Stewart Bolling. Such an interpretation would be completely unwarranted.

Another contention is that if the testator meant to bequeath only common stock, he would have said so instead of using the broader term, "securities issued by." It is claimed that this term must have been used for the purpose of passing the "account receivable."

I do not agree. In the first place, as already observed item five narrows the definition of "securities" so as to cover only those "issued by" the corporation. In the second place, it is perfectly natural to draft a dispositive clause to meet future contingencies. Had the term, "common stock," been used, and had the corporation subsequently issued preferred stock or bonds, the clause would not have covered them. This would undoubtedly have thwarted the intention of the testator.

Thus, there was a good reason for using the term, "securities issued by." The argument that the reason for its use was to bequeath a simple indebtedness which cannot be regarded as issued by the corporation is, to me, completely untenable.

The guardian ad litem asks what other language than "securities issued by Big Lonely Ranch, Inc.," could have been used to pass the account receivable. His point seems to be that unless those words are held to include the account receivable, a lawyer would have a hard time thinking up any words which would do so.

Without attempting to draft the clause myself, I am con-

fident that a lawyer of the competence of either counsel in this litigation could have found the words to express such an intention clearly and without equivocation. I cannot imagine that he would have omitted a specific and unambiguous provision on the subject in item five, but instead would have relied upon the off chance that a definition of "securities" on page 18 of the will, in a section dealing with the administration of the trusts and the investment of trust funds, would be interpreted as applying to item five on page 4 of the will in such a way as to dispense with the requirement that the securities be "issued" by the corporation, or so as to include within the term, "issued by," a simple indebtedness which was not in fact "issued."

The point is also made that inasmuch as the testator executed his will only five days before he made the first of his two loans to Big Lonely Ranch, he must have been thinking about the indebtedness, and therefore must have used the words, "securities issued by," with a view to including it.

In considering this contention, I will overlook the fact that the second and much larger loan was not made until nearly four months after the execution of the will.

As pointed out in another connection, if he had wanted it included, the most natural way to do so would have been to make a specific recital to that effect.

The testator was active and in excellent health until the time of his sudden death. It is entirely reasonable to suppose that his omission of anything in the will about the loan was because he expected it to be paid off during his life. In that event, the funds would have been part of the residuary estate, not part of the securities issued by Big Lonely Ranch.

Moreover, this was an ordinary debt collectible by the executor. In the absence of clear language so stating, why should we assume that the testator, in case he died before its payment, wanted it distributed as part of his ownership in the corporation which owed it? There appears to be nothing in the circumstances surrounding the making of the will which would lead us to believe that in using the words, "securities issued by Big Lonely Ranch, Inc.," the testator intended to include the indebtedness; and we would be on tenuous ground if we assumed such an intention from those circumstances.

In the briefs, the matter of equalization between the daugh-

ter and the son's lineal descendants was raised. However, at the hearing it was agreed that there was nothing to show an intention to give equal treatment. Accordingly, I will not discuss the matter.

In view of my conclusion that the indebtedness owing to the testator at his death from Big Lonely Ranch, Inc., was not a security "issued by" the corporation, it is unnecessary for me to decide whether the indebtedness comes within the definition of "securities" in item ten, section B, paragraph 12, and I express no opinion on the subject.

## Conclusion of Law

All funds in the hands of the executor available for distribution shall be distributed under item six and paragraph (a) thereunder, of the will, one-half to the testator's widow, Mrs. Mary K. Bolling, and one-half to Central National Bank of Cleveland, in trust for the benefit of the testator's daughter, Barbara Bolling, and her lineal descendants, in accordance with the pertinent provisions of the will.

*Judgment accordingly.*